## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| HAROLD E. RUTILA, IV, | Case: 2:25−cv−11572 |
| | Assigned To : Parker, Linda V. |
| *Plaintiff,* | Referral Judge: Stafford, Elizabeth A. |
| | Assign. Date : 5/27/2025 |
| vs. | Description: CMP RUTILA V. NATIONWIDE LOAN |
| | CONSULTANTS & ADVISORS, LLC ET AL (NA) |
| NATIONWIDE LOAN CONSULTANTS & | |
| ADVISORS, LLC d/b/a New Partners Funding; | Civil Action No. _____ |
| and BEYOND FINANCE, LLC, d/b/a FinUp, | |
| | **COMPLAINT** |
| *Defendant* | |

## INTRODUCTION

1. Plaintiff Harold E. Rutila, IV ("Plaintiff") brings this action for damages, injunctive relief, and any other available legal or equitable remedies resulting from the illegal actions of Defendants NATIONWIDE LOAN CONSULTANTS & ADVISORS, LLC and BEYOND FINANCE, LLC ("Defendants") in negligently and willfully contacting Plaintiff on Plaintiff's telephone in violation of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and its implementing regulations; the Michigan Home Solicitation Sales Act, MCL § 445.111, *et seq.*; the Michigan Consumer Protection Act, MCL § 445.900, *et seq.*; the Michigan Telephone Companies As Common Carriers Act, MCL § 484.125, *et seq.,* (collectively, the "Michigan Telemarketing Statutes"), and the Florida Consumer Protection Act, § 501.601 Fla. Stat. (2024), *et seq.*, thereby harassing Plaintiff and invading his privacy.

2. This case involves a telemarketing campaign by Defendants to sell personal loans and/or debt relief services to Plaintiff without having the required consent to contact him.

3.  Unless otherwise stated, Plaintiff alleges that Defendants' violations were knowing and willful, that Defendants did not adequately train their employees, agents, and other personnel on the requirements of the TCPA, the Michigan Telemarking Statutes, and the Florida Consumer Protection Act, and that Defendants did not maintain procedures reasonably adapted to avoid any such violations.

4.  Unless otherwise indicated, references to any individual Defendant throughout this Complaint includes all agents, employees, vendors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that named Defendant.

5.  Plaintiff alleges as follows based on personal knowledge and information and belief.

## JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over these claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because this case arises out of violations of the federal TCPA and state laws which form part of the same case or controversy.

7.  This Court has limited personal jurisdiction over Defendants because they transacted business within Michigan and/or did acts or caused acts to be done or consequences to occur in Michigan resulting in an action for tort. MCL § 600.715.

8.  Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391(b)(2) because the events and/or omissions giving rise to these claims occurred within this judicial district.

## PARTIES

9.  Plaintiff Harold E. Rutila, IV is a natural person and citizen who resides full-time in Wayne County, MI.

10. Defendant NATIONWIDE LOAN CONSULTANTS & ADVISORS, LLC is a Florida Limited Liability Company with a principal office address of 555 SW 12th Avenue, Suite 202, Pompano Beach, FL 33069.

11. Defendant NATIONWIDE LOAN CONSULTANTS & ADVISORS, LLC is registered in the State of Michigan as a Foreign Limited Liability Company, ID number 802626976.

12. Defendant BEYOND FINANCE, LLC is a California Limited Liability Company with a principal office address of 4370 La Jolla Village Drive, STE 920, San Diego, CA 92122.

13. Defendant BEYOND FINANCE, LLC is registered in the State of Michigan as a Foreign Limited Liability Company, ID number 802415973.

14. Defendants are each a person defined by 47 U.S.C. § 153(39).

## STATUTORY BACKGROUND

### TELEPHONE CONSUMER PROTECTION ACT (TCPA)

15. In 1991, Congress passed the TCPA in response to complaints about certain telemarketing practices. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11.

16. Congress acknowledged that interstate telemarketing is a problem of such magnitude far exceeding the capability of the Government to enforce alone when it created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize aggrieved private citizens to prosecute TCPA violations in private rights of action in the federal courts. *See* 47 U.S.C. § 227(b)(3).

17.  The TCPA imposes restrictions on the use of automated telephone equipment. 47 U.S.C. §
     227(b)(1).

18.  The TCPA bars any call, including a text message:

     [T]hat includes or introduces an advertisement or constitutes telemarketing, using an
     automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines
     or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other
     than a call made with the prior express written consent of the called party.

     47 C.F.R. § 64.1200(a)(2); *see also Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365,

     370 (6th Cir. 2015) (noting that the Federal Communications Commission has determined

     that the TCPA encompasses text messages to wireless numbers)

19.  Congress created a private right of action for aggrieved persons to receive $500 in damages

     for *each* violation of the TCPA subsection, or the associated regulations, concerning the use

     of automated telephone equipment. The damage amount may be trebled by up to three times

     the damage amount if a court finds that a defendant willfully or knowingly violated the

     statute and/or the regulations. 47 U.S.C. 227(b)(3).

20.  Congress also sought to protect telephone subscriber privacy rights and directed the FCC to

     develop regulations which meet that end, now contained at 47 C.F.R. §§ 64.1200(c), *et seq.*,

     64.1200(d), *et seq.*, and 64.1601(e).

21.  Congress created another private right of action for aggrieved persons to receive $500 in

     damages for *each* violation of the TCPA subsection, or the associated regulations,

     concerning subscriber privacy rights. The damage amount may be trebled by up to three

     times the damage amount if a court finds that a defendant willfully or knowingly violated

     the statute and/or the regulations. 47 U.S.C. § 227(c)(5).

22.  The Eastern District of Michigan has held that the legislative and regulatory history of 47

     C.F.R. § 64.1601(e), which governs caller ID requirements for telemarketing calls, was

promulgated to enforce 47 U.S.C. § 227(c), rendering the associated private right of action under that section available to plaintiffs in prosecuting violations of 47 C.F.R. § 64.1601(e). *See Dobronski v. Selectquote Insurance Services*, 2025 WL 900439 (E.D. Mich. March 25, 2025).

23.   In cases that the federal government is able to enforce, the fines levied in response to TCPA violations are in the millions to hundreds-of-millions of dollar range, the highest of which was levied on August 3, 2023 in the amount of $300 million against a transnational auto warranty telemarketing sales operation.   https://docs.fcc.gov/public/attachments/DOC-395728A1.pdf

24.   The FCC has declared that the telephone subscribers who have listed their wireless telephone number on the national Do-Not-Call List are deemed "residential subscribers." *In the Matter of Rules and Regulations Implementing the TCPA*, 18 F.C.C. Rcd. 14014, 14039, 2003 WL 21517853, at *14 ¶ 36 (2003).

25.   The TCPA makes it unlawful to make calls to any cellular or residential telephone line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b); *In the Matter of Rules & Regulations Implementing the TCPA of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012).

26.   In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" *Id.*

5.

27. The TCPA's definition of telephone solicitation applies to the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

28. The TCPA's definition of unsolicited advertisement applies to "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

29. The TCPA requires entities and persons engaging in telemarketing meet minimum standards, including training their personnel concerning the rules regarding telemarketing. 47 C.F.R. §§ 64.1200(d)(1)-(d)(3); 47 C.F.R. § 61.1200(b).

30. When considering individual officer liability under the TCPA, various Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See*, *e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

31. Under the TCPA, corporate officers of the Defendant are personally liable for the acts and omissions alleged in this Complaint.

**MICHIGAN HOME SOLICITATION SALES ACT**

32. The Michigan Legislature has enacted restrictions on telephone solicitations in the Michigan Home Solicitation Sales Act (MHSSA), MCL § 445.111, *et seq.*

33. The MHSSA defines a "telephone solicitation" as "any voice communication over a telephone for the purpose of encouraging the recipient of the call to purchase, rent, or invest in goods or services during that telephone call." MCL § 445.111(m).

34. The MHSSA defines a "telephone solicitor" as "any person doing business in this state who makes or causes to be made a telephone solicitation from within or outside of his state, including, but not limited to, calls made by use of automated dialing and announcing devices or by a live person." MCL § 445.111(n).

35. The MHSSA prohibits telephone solicitors from (a) making solicitations in whole or in part using a recorded message; (b) calling residential telephone subscribers who are on the federal Do-Not-Call list; (c) calling consumers who have requested not to receive calls from an organization; (d) misrepresenting in voicemails left for a consumer the existence of a business relationship and requesting him to call the organization back in reference thereto (e) failing to identify the full name of the organization on whose behalf the call was initiated at the beginning of a call; and (f) blocking or interfering with the caller ID function.

36. The MHSSA provides that a person who suffers a loss as a result of the MHSSA may bring an action to recover actual damages or $250, together with reasonable attorney fees. MCL § 445.111c(3).

## MICHIGAN CONSUMER PROTECTION ACT

37. Under the Michigan Consumer Protection Act (MCPA), the Michigan Legislature defines a series of violations which it deems "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade of commerce." MCL § 445.903.

38. Violating the telephone solicitation provisions of the MHSSA, MCL § 445.111, *et seq.*, also constitutes a violation of the MCPA. MCL § 445.903(gg).

39. The MCPA provides that a person who suffers a loss as a result of a violation of the MCPA may bring an action to recover actual damages or $250, together with reasonable attorney fees. MCL § 445.911.

## MICHIGAN TELEPHONE COMPANIES AS COMMON CARRIERS ACT

40. The Michigan Telephone Companies as Common Carriers Act (MTCCCA) was enacted "to prohibit certain uses of telephone lines and telephone equipment; to regulate persons using telephone lines and telephone equipment; [and] to prescribe a penalty for the violation of this act;... ."

41. The MTCCCA prohibits callers from (a) delivering recorded messages for the purpose of advertising without consent; (b) delivering or attempting to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller ID information that would otherwise be available; and (c) using automated dialing, push button, or tone activated devices which operate sequentially or are otherwise unable to avoid contacting subscribers who have not authorized the contact. *See* MCL § 484.125.

42. The MTCCCA provides that a subscriber contacted by a caller in violation of the MTCCCA may bring an action to recover damages of $1,000, together with reasonably attorney fees. MCL § 484.125(5).

## FLORIDA CONSUMER PROTECTION ACT

43. Under the Florida Consumer Protection Act, § 501 Fla. Stat. (2024), *et seq.* telemarketers:

   a. Must immediately identify themselves by their true first and last names and the business on whose behalf the call is being made, § 501.059(2);

b. may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer who has previously communicated to the telephone solicitor…that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission, § 501.059(5); and

c. may not make or knowingly allow to be made an unsolicited telephonic sales call if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party, § 501.059(8).

44. The Florida Consumer Protection Act permits called parties who are aggrieved by violations of the act to bring an action to enjoin such violations and recover actual damages or $500, whichever is greater, and for violations that the court finds to be willful or knowing, to treble that damage amount by not more than three times, § 501.059(10).

## FACTUAL ALLEGATIONS

45. At all times relevant herein, Plaintiff maintained and used a residential cellular telephone line, with phone number (810) 845-3497. This phone number is not associated with a business and is used solely by Plaintiff.

46. Plaintiff is the account holder and customary user of his phone number.

47. Plaintiff registered his phone number on the Federal Do Not Call Registry on August 18, 2009. Exhibit 1.

48. Plaintiff registered his phone number on the Do Not Call list in order to obtain solitude from invasive and harassing telemarketing calls, which interfere with Plaintiff's ability to use his phone for legitimate purposes.

49. Like many consumers, Plaintiff uses a cell phone with the intent of being able to receive calls, texts, and voicemails from a large network of extended family and friends, from his workplace, as well as to stream podcasts and music while performing normal daily activities like driving, completing various projects around his home, and enjoying leisure time.

50. Plaintiff operates his phone using a "notification zero" approach, where all notifications including those concerning missed calls, text messages, voicemails are cleared out on a regular basis to improve productivity, minimize phone display clutter, and to be able to efficiently respond to people who contact him for legitimate reasons.

51. Repetitive contacts of an illegitimate and illegal nature, such as those by Defendants, interrupt Plaintiff's normal use of his phone, consume Plaintiff's phone's battery life, disrupt the streaming of podcasts and music, create unwanted distractions as Plaintiff goes about his life, and requires Plaintiff's time and attention to clear those associated notifications.

52. Plaintiff's negative experience with frequent unsolicited communications of the type alleged herein is consistent with the experiences of millions of Americans, whom Congress and the state legislatures of Michigan and Florida sought to protect by passing laws banning unsolicited communications to people like Plaintiff who self-enroll in Do Not Call lists and providing them with private rights of action to swiftly enforce those provisions.

53. Through no fault of his own, Plaintiff has become besieged by interruptive and distracting phone calls, text messages, and voicemails from Defendants, despite that these actions are prohibited by law, and despite that Defendants were instructed by Plaintiff to stop doing so.

54. According to its website, https://nationwideloanconsultants.com, Defendant NATIONWIDE LOAN CONSULTANTS & ADVISORS, LLC (hereinafter "Defendant NATIONWIDE")

"provides research and matching services to individuals interested in obtaining a consumer loan."

55. Prior to the onset of the events alleged in this action, Plaintiff had no knowledge of the existence of Defendants, had no prior business relationship with Defendants, and had not provided Defendants with consent to contact him.

56. Defendants utilize telemarketing as a cost-effective method to solicit customers for loans and debt consolidation products at large.

57. As part of its telemarketing practices, Defendants utilize automated telephone dialing systems to contact consumers *en masse* by dialing their telephone numbers and determining which ones are "qualified" for Defendants' financial products.

58. Defendants' telephone solicitors work and place calls, texts, and voicemails from their physical office location in Pompano Beach, Florida, thereby subjecting Defendants to the laws of the State of Florida.

59. Defendants' telephone solicitations to Plaintiff occurred while Plaintiff resided in Michigan using a telephone number with the Flint, Michigan based area code (810), thereby subjecting Defendants to the laws of the State of Michigan.

60. In cases where consumers do not pick up Defendants' phone calls, Defendants' automated telephone dialing systems are programmed to transmit automated and/or prerecorded voicemail messages on consumers' voicemail inboxes.

61. On April 4, 2025 at 1:58 P.M., Plaintiff received a phone call for the purpose of solicitation from (571) 486-8399, which upon information and belief is a phone number Defendants used to contact him. Following this phone call, Defendants left Plaintiff an artificial or prerecorded voicemail, which read as follows:

Hey it's Amy from New Partners Funding. I'm calling about your preapproval for up to 35,000 with affordable monthly payments. This is a great opportunity to get ahead, and I want to make sure you don't miss out. Give me a call back at (833) 677-6222 so we can lock in your offer and take advantage of our credit builder loan. Again, that number is (833) 677-6222. Talk soon.

62. On April 8, 2025 at 5:22 P.M., Plaintiff called (833) 677-6222, the callback number advertised in Defendants' aforementioned April 4, 2025 voicemail. An agent identifying himself as being from New Partners Funding answered the call. After Plaintiff answered the agent's preliminary screening questions, the agent transferred Plaintiff to another agent, who identified himself as being from Defendant NATIONWIDE.

63. On April 15, 2025 at 8:43 A.M., Plaintiff received a text message for the purpose of solicitation from (720) 792-1554, which upon information and belief, Defendants used to contact him. The text message read as follows:

> FinUp: Hey, it's Jamie. Your 49,000 offer with just 529/mo is about to expire. For details call 833-764-7286 Reply Stop 2 Quit

64. On April 16, 2025 at 3:28 P.M., Plaintiff called (833) 764-7286, the callback number advertised in Defendants' aforementioned April 15, 2025 text message. Plaintiff's call was answered by an agent from Beyond Finance, who fielded some preliminary questions from Plaintiff.

65. As part of those preliminary questions, Plaintiff was asked if he would consent to a "soft check" of his personal credit, to which Plaintiff answered yes.

66. After a brief hold, Plaintiff was then transferred to an agent identifying himself as being from Defendant NATIONWIDE, indicating that the text from Beyond Finance had been sent on behalf of Defendant NATIONWIDE.

67. Plaintiff pulled a copy of his credit report online from Equifax, and upon reviewing the one and only "soft check" of his credit from April 16, 2025, it was revealed that the soft credit pull had been performed by Defendant BEYOND FINANCE LLC.

68. Defendant NATIONWIDE is vicariously liable under theories of actual authority, apparent authority, and/or ratification for the actions of Defendant BEYOND FINANCE LLC.

69. On April 17, 2025 at 1:22 A.M., Plaintiff emailed Defendants to have them place him on their Do-Not-Call list and to "instruct your affiliates, employees, contractors, and agents to stop calling this number."

70. On May 9, 2025 at 5:10 P.M., Plaintiff received a phone call for the purpose of solicitation from (313) 454-4162, which upon information and belief, is a phone number Defendants used to contact him. Plaintiff did not answer this call.

71. On May 9, 2025 at 6:30 P.M., Plaintiff received a phone call for the purpose of solicitation from (313) 454-4162, which upon information and belief, is a phone number Defendants used to contact him. Plaintiff did not answer this call.

72. On May 9, 2025 at 6:31 P.M., Plaintiff called (313) 454-4162 for the purpose of ascertaining the identity of the caller. A woman identifying herself as "Nikki from Nationwide Loan Consultants on a recorded line" answered.

73. During his conversation with Defendant NATIONWIDE's agent, she asked if Plaintiff would give her permission to call him back at (810) 845-3497 should the call become disconnected, to which Plaintiff responded "No," clearly enunciating that he would decide on whether to proceed on any sales offers during this call only. The agent acknowledged Plaintiff's response and continued with a sales pitch for personal loans.

74. During the course of this conversation, Defendants' agent sent Plaintiff a text message containing a link to the Nationwide Loan Consultants Customer Service Agreement, which featured a "Consulting Fee" of 10.9% of the total value of any loan signed by a customer, due within 48 hours of receiving funds, subject to a 5% late fee, and agreeing to pay attorney fees and costs for collection efforts on those fees.

75. Also included in the agreement was a "Communication Consent," which stated

> By signing this document, you authorize Nationwide to communicate with you by using the telephone number provided by you and any other telephone numbers associated or related to you that may be provided to us by you in the future. You consent to allow Nationwide to contact you by phone, text, email, mail, or by artificial or pre-recorded voice, even if you have listed yourself on any Do-Not-Call List. You also agree that any person or entity contacting you pursuant to your consent here may use automatic telephone dialing system, even if the telephone number you provided (or any other telephone number associated with you) is connected to a mobile phone and even if you might be charged for the call. Your consent to receive automated calls or text messages is not required for any purchase or availability of goods/services from Nationwide; if you do not consent, you may call us at 1-888-463-5235 to continue your inquiry.

76. The language in Defendants' "Communication Consent" reflects that Defendants were and are fully aware of its requirements under the TCPA, Michigan Telemarketing Statutes, and Florida Consumer Protection Act, specifically with respect to obtaining consent for calls, and had heretofore acted without the consent required under those laws.

77. Defendants' "Communication Consent" strongly implies that Defendants use automatic telephone dialing systems in their telemarketing activities.

78. Considering that Plaintiff never signed Defendants' Agreement, Plaintiff therefore never consented to contact from Defendants.

79. Upon being asked to sign the Agreement, Plaintiff told Defendant's agent that he would not.

80. Plaintiff stated that if he were to decide to pursue any of Defendants' services, he would reach back out to Nationwide himself.

81. According to the last sentence in Defendants' "Communication Consent" paragraph, Defendants' language in their own contract specified that their lack of consent to contact Plaintiff necessitated that Plaintiff be the only party who could initiate further contact, and more specifically, that Defendant NATIONWIDE could not initiate contact with Plaintiff.

82. Despite Plaintiff explicitly advising the agent not to call him back, and despite Plaintiff never having signed any consent for contact by Defendants, Defendants almost immediately began making numerous attempts to contact Plaintiff.

83. Plaintiff subsequently received and did not answer the following calls for the purpose of solicitation from (313) 454-4162, which is the same number Plaintiff verified as belonging to Defendant NATIONWIDE on May 9, 2025 at 6:31 P.M.

   a. May 9, 2025 at 8:13 P.M.
   b. May 12, 2025 at 12:57 P.M
   c. May 12, 2025 at 3:11 P.M.
   d. May 12, 2025 at 6:59 P.M.
   e. May 12, 2025 at 8:17 P.M.
   f. May 12, 2025 at 8:44 P.M.
   g. May 13, 2025 at 12:31 P.M.
   h. May 13, 2025 at 4:53 P.M.
   i. May 13, 2025 at 6:55 P.M.
   j. May 13, 2025 at 7:38 P.M.
   k. May 13, 2025 at 8:32 P.M.
   l. May 14, 2025 at 12:42 P.M.
   m. May 14, 2025 at 5:22 P.M.
   n. May 15, 2025 at 4:48 P.M.
   o. May 16, 2025 at 12:46 P.M.
   p. May 16, 2025 at 6:58 P.M.
   q. May 17, 2025 at 12:37 P.M.
   r. May 17, 2025 at 3:37 P.M.
   s. May 19, 2025 at 1:38 P.M.

84. In sum, Defendants placed at least 22 telephone solicitation calls, 1 artificial or prerecorded voicemail, and 1 text message to Plaintiff's phone number without his consent.

85. Plaintiff will clarify the number of calls, voicemails, and texts sent by Defendants to Plaintiff during discovery and amend this complaint accordingly.

86. Defendants are not exempt from the TCPA.

87. Defendants are not exempt from the Michigan Telemarketing Statutes.

88. Defendants are not exempt from the Florida Consumer Protection Act.

89. Defendants' calls, voicemail, and text message to Plaintiff were each a "telephone solicitation" as defined by the TCPA.

90. Defendants' calls, voicemail, and text message to Plaintiff were each an "unsolicited advertisement" as defined by the TCPA.

91. Defendants' calls and voicemail to Plaintiff were each telephone solicitations as defined in Michigan Telemarketing Statutes.

92. Defendants' calls, voicemail, and text message to Plaintiff were each a "telephonic sales call" as defined by the Florida Consumer Protection Act.

93. As a result of the foregoing, Plaintiff has been unnecessarily inconvenienced, annoyed, irritated, and frustrated by Defendants' repetitive attempts to contact him.

94. The foregoing acts and omissions were violations of the TCPA, Michigan Telemarketing Statutes, and Florida Consumer Protection Act.

95. Defendants' calls, voicemail, and text message were knowing and willful violations of the TCPA and the Florida Consumer Protection Act.

96. Defendants are engaging in violations of the TCPA, Michigan Telemarketing Statutes, and Florida Consumer Protection Act in order to garner business.

97. Defendants' officers, employees, and other personnel can be held personally liable in TCPA actions for unlawful conduct.

98. Defendants' calls, voicemail, and text to Plaintiff were not made for "emergency purposes."

99. Defendants' calls, voicemail, and text to Plaintiff were made without any prior express written consent.

100. Defendants contacted Plaintiff, despite that Plaintiff was on the Do Not Call Registry.

101. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent *bona fide* error, lawful right, legal defense, legal justification or legal excuse.

102. As a result of the above violations, Plaintiff has suffered losses and damages as set forth above entitling Plaintiff to an award of statutory, actual, and trebles damages.

103. In discovery, Plaintiff will identify the precise number of telephone calls, voicemails, and text messages left by Defendants and/or their agents and affiliates and will amend the complaint accordingly.

## **COUNT 1:**

### Violating TCPA automated telemarketing call provisions, 47 U.S.C. § 227(b)(1).

104. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

105. Defendants called and texted Plaintiff's cellular telephone line using an automatic telephone dialing system and/or a pre-recorded voice without Plaintiff's prior express written consent through at least 22 calls, at least 1 prerecorded voicemail, and at least 1 text message, for a combined total of at least 24 violations of 47 U.S.C. § 227(b)(1).

106. Pursuant to 47 U.S.C. § 227(b)(3)(B), Plaintiff was statutorily damaged by Defendants at least 24 times in the amount of $500 per time.

107. Defendants' actions were willful and/or knowing violations of the TCPA because Plaintiff's phone number has been registered on the federal Do-Not-Call list since 2009; because

Defendants' "Communication Consent" paragraph in the unsigned customer service agreement they sent to Plaintiff acknowledged the existence of Do-Not-Call lists and Defendants' statutory obligations to obtain consent to contact Plaintiff; and because Defendants maintain awareness of TCPA regulations concerning contacting individuals listed on the Do-Not-Call list as a function of their telemarketing operations. Despite this awareness, Plaintiff's presence on the federal Do-Not-Call list, Plaintiff's April 17, 2025 email instructing Defendants to cease contact with him, and Plaintiff's May 9, 2025 conversation with Defendants' agent in which he expressly rejected permission for Defendants to contact him, Defendants contacted and continued to contact Plaintiff anyway.

108. Because Defendants willfully and/or knowingly violated this subsection of the TCPA, the Court should treble the damage amount to $1,500 per each violation as permitted by 47 U.S.C. § 227(b)(3)(C).

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $36,000, plus costs and any other remedy deemed appropriate.

### COUNT 2:

Violation of TCPA protection of subscriber privacy rights, 47 U.S.C. § 227(c)(5):
Initiating a telephone solicitation to a residential telephone subscriber who is on
the national Do Not Call Registry, 47 C.F.R. § 64.1200(c)(2)

109. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

110. Defendants initiated a telephone solicitation to Plaintiff's cellular telephone line through at least 22 calls, at least 1 prerecorded voicemail, and at least 1 text message, despite that Plaintiff was on the National Do Not Call Registry, for a combined total of at least 24 violations of 47 C.F.R. § 64.1200(c)(2).

111. Pursuant to 47 U.S.C. § 227(c)(5)(B), Plaintiff was statutorily damaged by Defendants at least 24 times in the amount of $500 per time.

112. Defendants' actions were willful and/or knowing violations of the TCPA because Plaintiff's phone number has been registered on the federal Do-Not-Call list since 2009; because Defendants' "Communication Consent" paragraph in its unsigned customer service agreement they sent to Plaintiff acknowledges the existence of Do-Not-Call lists and Defendants' statutory obligations to obtain consent to contact Plaintiff; and because Defendants maintain awareness of TCPA regulations concerning contacting individuals listed on the Do-Not-Call list as a function of their telemarketing operations. Despite this awareness, Plaintiff's presence on the federal Do-Not-Call list, Plaintiff's April 17, 2025 email instructing Defendants to cease contact with him, and Plaintiff's May 9, 2025 conversation with Defendants' agent in which he expressly rejected permission for Defendants to contact him, Defendants contacted and continued to contact Plaintiff anyway.

113. Because Defendants willfully and/or knowingly violated this subsection of the TCPA, the Court should treble the damage amount to $1,500 per each violation as permitted by 47 U.S.C. § 227(c)(5)(C).

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $36,000, plus costs and any other remedy deemed appropriate.

## **COUNT 3:**

### Violation of TCPA protection of subscriber privacy rights, 47 U.S.C. § 227(c)(5): Failure to provide name of telemarketing entity in artificial or prerecorded voice telephone voicemail, 47 C.F.R. § 64.1200(b)

114. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

115. Defendants left Plaintiff at least 1 artificial or prerecorded voicemail which did not conform to 47 C.F.R. § 64.1200(b), which requires that all artificial or prerecorded voice messages shall "at the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call." 47 C.F.R. § 64.1200(b).

116. Defendants' voicemail identifies the caller as "Amy from New Partners Funding."

117. New Partners Funding is a non-existent or otherwise unregistered entity whose name serves as a fictitious pseudonym for Defendant NATIONWIDE.

118. To the extent New Partners Funding is a real entity, Defendants' voicemail still violates this section of the law because it fails to specify that New Partners Funding was calling "on behalf of" Defendant NATIONWIDE, since the objective of the call was to garner business for Defendant NATIONWIDE.

119. As contemplated in the regulatory language, the "entity that is responsible for initiating the call" was Defendant NATIONWIDE, not New Partners Funding, thereby violating 47 C.F.R. § 64.1200(b).

120. Pursuant to 47 U.S.C. § 227(c)(5)(B), Plaintiff was statutorily damaged by Defendants at least 1 time in the amount of $500 per time.

121. Defendants' actions were willful and/or knowing violations of the TCPA as evidenced by Defendants' knowledge of the TCPA as expressed in its unsigned customer service agreement and its creation and unlawful distribution of an artificial or prerecorded voicemail to Plaintiff's phone in violation of the TCPA.

122. Because Defendants willfully and/or knowingly violated this subsection of the TCPA, the Court should treble the damage amount to $1,500 per each violation as permitted by 47 U.S.C. § 227(c)(5)(C).

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $1,500, plus costs and any other remedy deemed appropriate.

## COUNT 4:

### Violation of protections of subscriber privacy rights, 47 U.S.C. § 227(c)(5): Failure to honor a residential telephone subscriber's request not to receive calls, 47 C.F.R. § 64.1200(d)(3)

123.  Plaintiff incorporates all preceding paragraphs as if fully restated herein.

124.  On April 17, 2025, Plaintiff sent Defendants an email with the subject line, "Do Not Call Request," which read, "Dear Nationwide Loan Consultants, [p]lease place my phone number (810) 845-3497 on your Do Not Call list and instruct your affiliates, employees, contractors, and agents to stop calling this number."

125.  Subsequently, beginning on or about May 9, 2025, Plaintiff received 21 calls for the purpose of solicitation from Defendants from (313) 454-4162, a number Plaintiff had dialed previously to confirm that it belonged to Defendant NATIONWIDE.

126.  Pursuant to 47 U.S.C. § 227(c)(5)(B), Plaintiff was statutorily damaged by Defendants at least 21 times in the amount of $500 per time.

127.  Defendants' actions were willful and/or knowing violations because (a) Plaintiff had never granted Defendants consent to contact him in the first place; (b) in a call with Defendant NATIONWIDE on May 9, 2025, Plaintiff explicitly rejected Defendant NATIONWIDE's agent's attempts to obtain both verbal and written consent to contact Plaintiff further; (c) Defendants' customer service agreement included language confirming Defendants' awareness of the requirement under the law to obtain consent to contact Plaintiff but which Plaintiff never signed; (d) Defendants' agreement explicitly outlines that a customer's failure to provide consent means that Defendants cannot call him; and (e) Plaintiff sent Defendant

NATIONWIDE an explicit Do Not Call demand on April 17, 2025 via email, and 22 days had elapsed between that email and Defendants' subsequent unlawful contacts to Plaintiff, which was a more than reasonable time frame for Defendants to implement Plaintiff's lawful request.

128. Because Defendants willfully and/or knowingly violated this subsection of the TCPA, the Court should treble the damage amount to $1,500 per each violation as permitted by 47 U.S.C. § 227(c)(5)(C).

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $31,500, plus costs and any other remedy deemed appropriate.

## COUNT 5:

### Violation of Michigan Home Solicitation Sales Act (MHSSA), MCL § 445.111:
Making a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal Do-Not-Call list, MCL § 445.111a(5)

129. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

130. Defendants placed at least 22 phone calls and 1 voicemail, for a total of 23 telephone solicitations to Plaintiff, despite that Plaintiff's phone number has been registered on the federal Do-Not-Call list since 2009.

131. Pursuant to MCL § 445.111c(3), Plaintiff was statutorily damaged by Defendants at least 23 times in the amount of $250 per time.

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $5,750 plus costs and any other remedy deemed appropriate.

## COUNT 6:

### Violation of Michigan Home Solicitation Sales Act (MHSSA), MCL § 445.111:
Making a telephone solicitation to a consumer in the State of Michigan who has requested that he not receive calls from the organization on whose behalf the telephone solicitation is made, MCL § 445.111c(1)(g)

132.  Plaintiff incorporates all preceding paragraphs as if fully restated herein.

133.  On April 17, 2025, Plaintiff sent Defendants an email with the subject line, "Do Not Call Request," which read, "Dear Nationwide Loan Consultants, [p]lease place my phone number (810) 845-3497 on your Do Not Call list and instruct your affiliates, employees, contractors, and agents to stop calling this number."

134.  Subsequently, beginning on or about May 9, 2025, Plaintiff received 21 calls for the purpose of solicitation from Defendants from (313) 454-4162, a number Plaintiff dialed previously to confirm that it belonged to Defendant NATIONWIDE.

135.  Pursuant to MCL § 445.111c(3), Plaintiff was statutorily damaged by Defendants at least 21 times in the amount of $250 per time.

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $5,250, plus costs and any other remedy deemed appropriate.

## COUNT 7:

### Violation of Michigan Home Solicitation Sales Act (MHSSA), MCL § 445.111:
### Making a telephone solicitation that consists in whole or in part of a recorded message, MCL § 445.111a(1)

136.  Plaintiff incorporates all preceding paragraphs as if fully restated herein.

137.  Defendants called Plaintiff using an artificial or prerecorded voice to leave Plaintiff a voicemail 1 time.

138.  Pursuant to MCL § 445.111c(3), Plaintiff was statutorily damaged by Defendants at least 1 time in the amount of $250 per time.

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $250, plus costs and any other remedy deemed appropriate.

## COUNT 8:

Violation of Michigan Home Solicitation Sales Act (MHSSA), MCL § 445.111:
Misrepresenting in a message left for a consumer on his voice mail that the consumer has a
current business matter or transaction or a current business or customer relationship with the
telephone solicitor or another person and request that the consumer call the telephone solicitor or
another person to discuss that matter, transaction, or relationship, MCL § 445.111c(1)(h)

139.  Plaintiff incorporates all preceding paragraphs as if fully restated herein.

140.  In total, Defendants left Plaintiff at least 1 voicemail.

141.  This voicemail inferred that Plaintiff had either (a) a current business matter or transaction,

or (b) current business or customer relationship with Defendants despite that Plaintiff had

no such relationship with Defendants.

142.  This voicemail also requested that Plaintiff call Defendants to discuss the purported matter,

transaction, or relationship, despite that no such things existed.

143.  Pursuant to MCL § 445.111c(3), Plaintiff was statutorily damaged by Defendants at least 1

time in the amount of $250 per time.

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly

and/or severally, in the amount of $250, plus costs and any other remedy deemed appropriate.

## COUNT 9:

Violation of Michigan Home Solicitation Sales Act (MHSSA), MCL § 445.111:
Failure to state the full name of the organization on whose behalf the call was initiated, MCL §
445.111b(1)

144.  Plaintiff incorporates all preceding paragraphs as if fully restated herein.

145.  Defendants left Plaintiff at least 1 artificial or prerecorded voicemail which did not conform

to the MHSSA's requirement that telephone solicitors provide "at the beginning of the

telephone solicitation, … the full name of the organization…on whose behalf the call was

initiated" § 445.111b(1).

146. Defendants' voicemail identifies the caller as "Amy from New Partners Funding," when in fact the call was made by Defendant NATIONWIDE.

147. New Partners Funding is a non-existent or otherwise unregistered entity whose name serves as a fictitious pseudonym for Defendant NATIONWIDE.

148. To the extent New Partners Funding is a real entity, Defendants' voicemail still violates this section of the law because it fails to specify that New Partners Funding was calling "on behalf of" Defendant NATIONWIDE.

149. Pursuant to MCL § 445.111c(3), Plaintiff was statutorily damaged by Defendants at least 1 time in the amount of $250 per time.

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $250, plus costs and any other remedy deemed appropriate.

### <u>COUNT 10:</u>

<u>Violation of Michigan Consumer Protection Act, MCL § 445.900:
Engaging in unfair, unconscionable, or deceptive methods, acts, or practices in conduct of trade
or commerce by violating the MHSSA, MCL § 445.111, *et seq*, in conjunction with
a telephone solicitation, MCL § 445.903(1)(gg)</u>

150. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

151. Defendants are liable for 23 violations of the MHSSA in Count 5, 21 violations of the MHSSA in Count 6, 1 violation of the MHSSA in Count 7, 1 violation of the MHSSA in Count 8, and 1 violation of the MHSSA in Count 9, totaling of 47 violations of the MHSSA.

152. Each and every MHSSA violation constitutes an unfair, unconscionable, or deceptive method, act, or practice in the conduct of trade or commerce under the Michigan Consumer Protection Act, MCL § 445.900. *See* MCL § 445.903(1)(gg).

153. Pursuant to MCL § 445.911(2), Plaintiff was statutorily damaged by Defendants at least 47 times in the amount of $250 per time.

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $11,750, plus costs and any other remedy deemed appropriate.

## COUNT 11:

Violation of Michigan Telephone Companies as Common Carriers Act (MTCCCA),
MCL § 484.125: Using a telephone line to contact a telephone subscriber at the subscriber's residence to deliver a recorded message for the purpose of presenting commercial advertising to the subscriber, MCL § 484.125(2)(a)

154. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

155. Defendants called Plaintiff using an artificial or prerecorded voice to leave Plaintiff a voicemail for the purpose of presenting commercial advertising, for a total of 1 violation of MCL § 484.125(2)(a).

156. Pursuant to MCL § 445.911(2), Plaintiff was statutorily damaged by Defendants at least 1 time in the amount of $1,000 per time.

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $1,000, plus costs and any other remedy deemed appropriate.

## COUNT 12:

Violation of Florida Consumer Protection Act, § 501 Fla. Stat. (2024), *et seq.*:
Failure by telemarketers to identify themselves by their true first and last names and the business on whose behalf the call is being made, § 501.059(2).

157. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

158. Defendants left Plaintiff at least 1 artificial and/or prerecorded voicemail which did not conform to the requirements of Florida law, which states

> Any telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone number shall identify himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation.
> § 501.059(2)

159. Included in Florida's definition of "telephonic sales call" is "a voicemail transmission to a consumer." § 501.059(1)(j).

160. Defendants' voicemail to Plaintiff identified the caller as "Amy from New Partners Funding," which inherently fails to provide the solicitor's true first and last name as required, because no last name was specified.

161. Furthermore, New Partners Funding is a non-existent or otherwise unregistered entity whose name serves as a fictitious pseudonym for Defendant NATIONWIDE, thereby violating this section's requirement for telephone solicitors to identify "the business on whose behalf" the call was being made.

162. To the extent New Partners Funding is a real entity, Defendants' voicemail still violates this section of the law because it fails to specify that New Partners Funding was calling "on behalf of" Defendant NATIONWIDE.

163. Pursuant to § 501.059(10)(a), Plaintiff was statutorily damaged by Defendants at least 2 times in the amount of $500 per time.

164. Defendants' actions were willful and/or knowing violations of the Florida Consumer Protection Act as evidenced by Defendants' knowledge of Florida state telemarketing laws as expressed in the unsigned customer service agreement it sent to Plaintiff and Defendants' creation and unlawful distribution of an artificial or prerecorded voicemail to Plaintiff's phone that falls short of the requirements of Florida state law.

165. Because Defendants willfully and/or knowingly violated this section, the Court should treble the damage amount to $1,500 per each violation as permitted by § 501.059(10)(b).

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $3,000, plus costs and any other remedy deemed appropriate.

## COUNT 13:

Violation of Florida Consumer Protection Act, § 501 Fla. Stat. (2024), *et seq.*:
Initiating an outbound telephone call, text message, or voicemail transmission to a consumer who has previously communicated that he does not wish to receive such communications, § 501.059(5).

166. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

167. On April 17, 2025, Plaintiff sent Defendants an email with the subject line, "Do Not Call Request," which read, "Dear Nationwide Loan Consultants, [p]lease place my phone number (810) 845-3497 on your Do Not Call list and instruct your affiliates, employees, contractors, and agents to stop calling this number."

168. Subsequently, beginning on or about May 9, 2025, Plaintiff received 21 calls for the purpose of solicitation from Defendants from (313) 454-4162, a number Plaintiff dialed previously to confirm that it belonged to Defendant NATIONWIDE.

169. Pursuant to § 501.059(10)(a), Plaintiff was statutorily damaged by Defendants at least 21 times in the amount of $500 per time.

170. Defendants' actions were willful and/or knowing violations because (a) Plaintiff had never granted Defendants consent to contact him in the first place; (b) in a call with Defendant NATIONWIDE on May 9, 2025, Plaintiff explicitly rejected Defendant NATIONWIDE's agent's attempts to obtain both verbal and written consent to contact Plaintiff further; (c) Defendants' customer service agreement included language confirming Defendants' awareness of the requirement under the law to obtain consent to contact Plaintiff but which Plaintiff never signed; (d) Defendants' agreement explicitly outlines that a customer's failure to provide consent means that Defendants cannot call him; and (e) Plaintiff sent Defendant NATIONWIDE an explicit Do Not Call demand on April 17, 2025 via email, and 22 days had elapsed between that email and Defendants' subsequent unlawful contacts to Plaintiff.

171. Because Defendants willfully and/or knowingly violated this section, the Court should treble the damage amount to $1,500 per each violation as permitted by § 501.059(10)(b).

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $31,500, plus costs and any other remedy deemed appropriate.

## **COUNT 14:**

Violation of Florida Consumer Protection Act, § 501 Fla. Stat. (2024), *et seq.*:
Making, or knowingly allowing to be made, an unsolicited telephonic sales call if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party, § 501.059(8).

172. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

173. Defendants called Plaintiff one time using an automated system for the selection and dialing of telephone numbers and the playing of a recorded message when a connection was completed to Plaintiff's number in order to leave Plaintiff an unsolicited artificial or prerecorded voicemail.

174. Defendants also called Plaintiff 22 times using an automated system for the selection and dialing of telephone numbers.

175. Pursuant to § 501.059(10)(a), Plaintiff was statutorily damaged by Defendants at least 23 times in the amount of $500 per time.

176. Defendants' actions were willful and/or knowing violations because (a) Plaintiff had never granted Defendants consent to contact him in the first place; (b) in a call with Defendant NATIONWIDE on May 9, 2025, Plaintiff explicitly rejected Defendant NATIONWIDE's agent's attempts to obtain both verbal and written consent to contact Plaintiff further; (c) Defendants' customer service agreement included language confirming Defendants' awareness of the requirement under the law to obtain consent to contact Plaintiff but which

Plaintiff never signed; (d) Defendants' agreement explicitly outlines that a customer's failure to provide consent means that Defendants cannot call him; and (e) Plaintiff sent Defendant NATIONWIDE an explicit Do Not Call demand on April 17, 2025 via email, and 22 days had elapsed between that email and Defendants' subsequent unlawful contacts to Plaintiff.

177.  Because Defendants willfully and/or knowingly violated this section, the Court should treble the damage amount to $1,500 per each violation as permitted by § 501.059(10)(b).

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $34,500, plus costs and any other remedy deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgement be entered in his favor and against Defendants, jointly and severally, as follows:

**A.** Damages:

    **1.** Damages for violations of the TCPA alleged:

| Count | Violations |
|-------|------------|
| 1. | 24 |
| 2. | 24 |
| 3. | 1 |
| 4. | 21 |

    A total of 70 violations at $500 per violation, for total damages of $35,000 which shall be trebled pursuant to 47 U.S.C. § 227(b)(3)(C) and § 227(c)(5)(C) because the violations were willful and/or knowing, for total damages of **$105,000.**

    **2.** Damages for violations of the Michigan Home Solicitation Sales Act alleged:

| Count | Violations |
|-------|------------|
| 5. | 23 |
| 6. | 23 |
| 7. | 1 |
| 8. | 1 |
| 9. | 1 |

A total of 49 violations at $250 per violation, for total damages of **12,250**.

3.  Damages for violations of the Michigan Consumer Protection Act at Count 10:

A total of 49 violations at $250 per violation, for total damages of **12,250**.

4.  Damages for violating the Michigan Telephone Companies As Common Carriers Act alleged at Count 11: 1 violation at $1,000 per violation, for total damages of **1,000**.

5.  Damages for violations of the Florida Consumer Protection Act alleged:

| Count | Violations |
|-------|------------|
| 12.   | 2          |
| 13.   | 21         |
| 14.   | 23         |

A total of 46 violations at $500 per violation, for total damages of $23,000 which shall be trebled pursuant to § 501.059(10)(b) because the violations were willful and/or knowing, for total damages of **69,000**.

The cumulative total amount of damages claimed is **199,500**, which in the event of default judgement, is the sum certain damages amount that will be sought.

B.  An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C.  Injunctive relief prohibiting Defendants from initiating any telephone calls, voicemails, and text messages to Plaintiff's cellular telephone line in the future;

D.  Interest accruing from the date of filing until paid at the statutory rate;

E.  Leave to amend this Complaint to conform to the evidence presented at trial; and

F.  Any other relief this Court deems just and proper.

/ /

Respectfully submitted,

Dated: May 27, 2025                                        /s/ Harold E. Rutila, IV

                                                          Harold E. Rutila IV
                                                          *Pro se*
                                                          11800 Merriman Rd #51552
                                                          Livonia, MI 48151
                                                          h.rutila@gmail.com
                                                          (810) 845-3497

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Harold E. Rutila, IV | Nationwide Loan Consultants and Advisors, LLC; Beyond Finance LLC |

**(b)** County of Residence of First Listed Plaintiff    Wayne County, MI
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange<br>[ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | |
| [ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | [ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | [ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | [ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | [ ] 891 Agricultural Acts<br>[ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. § 227, Telephone Consumer Protection Act
Brief description of cause:
Unlawful telemarketing

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 199,500.00

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
May 27, 2025

SIGNATURE OF ATTORNEY OF RECORD
*Harold E. Rutila IV*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

PURSUANT TO LOCAL RULE 83.11

1.      Is this a case that has been previously dismissed?        ☐ Yes
                                                                  ☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.      Other than stated above, are there any pending or previously
        discontinued or dismissed companion cases in this or any other      ☐ Yes
        court, including state court? (Companion cases are matters in which  ☑ No
        it appears substantially similar evidence will be offered or the same
        or related parties are present and the cases arise out of the same
        transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :